# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT A. POWER (#528218)** | **CIVIL ACTION** |
| **VERSUS** | |
| **BURL CAIN, ET AL.** | **NO. 13-0295-JJB-EWD** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 1, 2016.

                                                                            **ERIN WILDER-DOOMES**
                                                                        **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROBERT A. POWER (#528218)                              CIVIL ACTION

VERSUS

BURL CAIN, ET AL.                                                  NO. 13-0295-JJB-EWD

## MAGISTRATE JUDGE'S REPORT

Before the court is the Motion for Summary Judgment of the remaining defendant in this case, Trish Foster (R. Doc. 53). This motion is opposed.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Secretary James LeBlanc, former Warden Burl Cain, Ass't Warden Robert Butler and Legal Programs Director Trish Foster ("Foster"). The plaintiff alleges that his legal mail was lost on several occasions and that, as a result of the failure of Legal Programs personnel to perform their jobs efficiently, he has been barred from proceeding in two courts and has effectively lost any chance of challenging or overturning his criminal convictions. Finally, the plaintiff alleges that prison officials have interfered with his access to the courts by refusing to respond to an administrative grievance that he filed relative to the foregoing. Pursuant to a previous Ruling in this case (R. Doc. 42), the plaintiff's claims asserted against defendants James LeBlanc, Burl Cain and Robert Butler have been voluntarily dismissed. In addition, the Court has granted, in part, a motion to dismiss filed by all defendants and has dismissed all of the plaintiff's claims asserted against defendant Foster except (1) his claim for nominal damages asserted against the defendant in her individual capacity for the alleged violation of his constitutional rights, and (2) his claim for prospective injunctive

relief asserted against the defendant in her official capacity.  *See* R. Docs. 46 and 48.

Defendant Foster now moves for summary judgment on plaintiff's remaining claims relying on the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent administrative remedy proceedings, and the affidavit of defendant Foster.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of

3

the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, the plaintiff alleges that on three separate occasions his legal mail has been lost by prison personnel and that, as a result of one of such occasion, he has effectively been barred from proceeding in two courts with litigation challenging the validity of his criminal convictions. In addition, the plaintiff alleges that prison administrators have refused to provide a timely response to an administrative grievance that he filed relative to the forgoing, and this is because they do not want him to be able to proceed in court. Instead, unnamed prison officials have allegedly asked him to voluntarily dismiss the grievance. The plaintiff complains that the procedures utilized by prison administrators to handle legal mail, to supervise mail room personnel, and to provide legal assistance to inmates are deficient and that, as a result, he has been denied access to the courts and has been prejudiced in asserting a challenge to his criminal convictions that he now believes he has no viable chance of overturning.

Upon a review of the plaintiff's various pleadings in this case, including the plaintiff's pertinent administrative remedy proceedings, it appears that his specific factual allegations center around three specific incidents and that his claims are based principally on those incidents. First, the plaintiff asserts that, after pleading guilty in state court to criminal charges in Lafourche Parish in 2007, and after exhausting state post-conviction remedies, he filed an application for federal habeas corpus relief in the United States District Court for the Eastern District of Louisiana in

February 2012.[1]  Pursuant to a Magistrate Judge's Report issued in that case on April 30, 2012, the Eastern District Court substantively addressed the plaintiff's contentions and recommended that his habeas corpus claims be dismissed with prejudice.  The referenced Magistrate Judge's Report specifically advised the plaintiff, in accordance with 28 U.S.C. § 636(b)(1), that he had fourteen (14) days within which to file a written Objection to the Magistrate Judge's Report.  The plaintiff asserts that although he thereafter prepared a timely Objection and submitted same to prison officials for electronic transmission to the Eastern District Court on or about May 11, 2012, the Objection was apparently neither received nor docketed by the Eastern District Court and, on June 1, 2012, the District Judge accepted the Magistrate Judge's Recommendation and dismissed the plaintiff's habeas corpus proceeding with prejudice.  In the District Judge's Order accepting the Recommendation, the Judge specifically noted "the failure of petitioner to file any objection to the Magistrate Judge's Report and Recommendation."  The plaintiff asserts that, as a result of the foregoing, prison officials have interfered with his constitutional right of access to the courts by failing to properly transmit his timely Objection to the Eastern District Court.  The plaintiff further contends that he thereby suffered actual prejudice in his ability to challenge his state criminal convictions.

The plaintiff next asserts that upon receipt of the June 1, 2012, Judgment of the Eastern District Court dismissing his federal habeas corpus proceeding, he filed a Supplemental Objection in the Eastern District Court on or about June 28, 2012 – asserting that he had in fact submitted a timely Opposition to the Magistrate Judge's Report.  As a result of this Supplemental Opposition, a second Order of Dismissal was issued by the District Judge on August 6, 2012.  The plaintiff

---

[1] *Power v. Burl Cain, Warden, L.S.P.*, 12-567, United States District Court, Eastern District of Louisiana.

alleges that he then, in "a desperate attempt to explain [his] situation," allegedly sent documentation to the United States Court of Appeals for the Fifth Circuit on or about August 21, 2012, complaining regarding the foregoing events. The Fifth Circuit, however, returned his documentation on or about September 21, 2012, advising that the appellate court lacked jurisdiction to review his claims in the absence of a formal Notice of Appeal in the District Court. The plaintiff alleges that he then requested help and advice from a co-inmate legal assistant at LSP on or about September 28, 2012. Notwithstanding, the assigned legal assistant allegedly retained the plaintiff's paperwork, took no appropriate legal action, and did not return the paperwork until after the time for pursuing an appeal had elapsed. The plaintiff complains that, as a result of the foregoing and the alleged improper training and supervision of the LSP legal assistance program, he lost the opportunity to submit a timely appeal to the Fifth Circuit.

Finally, the plaintiff asserts that in November 2012, he submitted an administrative grievance to prison officials at LSP complaining about the foregoing events. According to the plaintiff, prison officials thereafter failed or refused to timely respond to the grievance at either the first or second steps of the administrative process. The plaintiff complains that, instead, he was urged on several occasions to voluntarily withdraw the referenced grievance. The plaintiff asserts that this conduct by prison officials in failing to timely respond to the grievance and in urging him to withdraw same impermissibly interfered with his constitutional right to seek access to the courts.

In response to the plaintiff's allegations, defendant Foster asserts that she is entitled to qualified immunity in connection with the plaintiff's claims. Specifically, Foster contends that the plaintiff has failed to allege facts or present evidence sufficient to show the existence of a genuine issue of disputed fact relative to any alleged violation of the plaintiff's constitutional

rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). The Court considers whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001), should not be "regarded as an inflexible requirement," but may be considered if a court wishes). After *Pearson*, courts now have discretion to decide which of the two prongs of the analysis to address first. This inquiry is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*. at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct. *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court

finds that the plaintiff has failed to make a showing sufficient to defeat the assertion of qualified immunity.

First, the plaintiff complains that prison personnel interfered with his access to the courts by failing in June 2012, to properly transmit his timely Objection to the Eastern District Magistrate Judge's Report that recommended dismissal of his habeas corpus proceeding. In this regard, a substantive right of access to the courts has long been recognized. *Lewis v. Casey*, 518 U.S. 343, 347 (1996), *citing Bounds v. Smith*, 430 U.S. 817, 821 (1977). Specifically, access to the courts is incorporated into the First Amendment right to petition the government for redress of grievances. *Driggers v. Cruz*, 740 F.3d 333, 336-37 (5th Cir. 2014) citing *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). In its most obvious and fundamental manifestation, this right protects an inmate's physical access to the courts. Thus, for example, prison officials may not block or refuse to transmit, through procedural devices or otherwise, the transmission of legal documents that prisoners wish to send to the courts. *Ex parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941) (striking down a state regulation prohibiting prisoners from filing petitions for habeas corpus without the approval of a state official); *Jackson v. Procunier*, 789 F.2d 307, 310–11 (5th Cir.1986) (prison officials may not deliberately delay mailing legal papers when they know that such delay will effectively deny a prisoner access to the courts). Nor can they take other actions – such as confiscating or destroying legal papers – that would have a similar effect. *See Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994), *citing Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989). The right of access to the courts, however, "guarantees no particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before

the courts." *Lewis v. Casey*, *supra*, 518 U.S. at 356. Further, in order to prevail on a claim of interference with access to the courts, an inmate claimant must be able to show that has he suffered some cognizable legal prejudice or detriment as a result of the defendant's actions. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996). In addition, the plaintiff must be able to show that the defendant had an intent to interfere with the plaintiff's right to submit pleadings to the courts or was otherwise deliberately indifferent to the plaintiff's wish to do so. *See Herrington v. Martin*, 2009 WL 5178340, *2 (W.D. La., Dec. 23, 2009) (recognizing that "[a]n 'access to courts' claim is actionable only if the deprivation stemmed from intentional conduct on the part of the defendant; 'access to courts' claims premised on a defendant's mere negligence or inadvertence are not cognizable under § 1983"). Finally, an inmate's right to seek access to the courts is limited to the making of non-frivolous claims involving the assertion of legitimate constitutional rights. *Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997). Therefore, because the right to access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court," *Christopher v. Harbury*, 536 U.S. 403, 415 (2002), "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Id.*

The plaintiff's instant access-to-courts claim fails on several fronts. First, the plaintiff has failed to allege sufficient personal involvement by defendant Foster in the events complained of. Specifically, the plaintiff has failed to allege sufficient connexity between the actions of defendant Foster and the alleged constitutional violations sought to be redressed. Pursuant to well-settled legal principles, in order for a prison official to be found liable under § 1983, the official must have been personally involved in conduct causing an alleged deprivation of a constitutional right

9

or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that this defendant was responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). In the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith, supra,* 718 F.2d at 768.

In the instant case, the plaintiff has failed to allege that defendant Foster had any actual personal involvement in receiving, scanning or transmitting the plaintiff's Objection to the Magistrate Judge's report to the Eastern District Court in May 2012. All that the plaintiff has alleged relative to defendant Foster is that she is the Director of the Legal Programs Department at LSP and so is accountable for the "neglection of responsibility" by Department personnel in performing their duties. This is a statement of mere supervisory acts, however, for which there is no liability under § 1983. Further, although the plaintiff suggests that the training, policies and procedures utilized by the Legal Programs Department for transmitting legal mail are deficient as a whole, this is a conclusory assertion and is supported only by reference to the single incident

10

complained of by the plaintiff herein.² A single incidence of mishandling or wrongdoing, however, does not support an inference that training, policies or procedures implemented by the defendant are unconstitutional as a whole. *See Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008) *citing Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

In addition to the foregoing, there is nothing in the record that suggests that there was any *intent* upon the part of prison officials, much less on the part of defendant Foster, to obstruct or interfere with the plaintiff's access to the courts through the failure to transmit his Objection to the Magistrate Judge's Report in the Eastern District proceedings. To the contrary, the evidence filed in the record reflects that the plaintiff's Objection was in fact received by the LSP Legal Programs Department on May 11, 2012, within the 14-day period allowed by 28 U.S.C. § 636(b)(1), and there are date-stamps on the referenced Objection indicating that it was "scanned ... and emailed" to the Court on the same date. While it is unclear why the Objection was not received or docketed by the Eastern District Court, there is nothing in the record to suggest that this was the result of intentional wrongdoing by prison personnel in the handling or transmission of the plaintiff's legal pleading. To the contrary, the failure could equally have been the result of negligence on the part of prison personnel, negligence or mishandling on the part of personnel at the receiving court, or some failure occurring during electronic transmission. Thus, there is no showing of any intent to interfere with the course of the plaintiff's legal proceedings by the defendant or other prison personnel.

---

2 Whereas the plaintiff makes reference to three alleged incidents involving his legal mail "com[ing] up missing," *see* R. Doc. 1 at p. 4, he provides the date of only one such incident in May 2012, and he only asserts a complaint regarding alleged prejudicial repercussions resulting from the loss of his legal mail on that single incident.

Finally, and most importantly, the plaintiff is unable to show that he suffered any prejudice as a result of the alleged failure by prison personnel to timely transmit his Objection to the Eastern District Court. Specifically, as pointed out by the defendant and as is apparent from attachments to the plaintiff's administrative grievance, after the Eastern District Judge entered his initial Order and Judgment on April 30 and June 1, 2012, respectively, accepting the Magistrate Judge's Recommendation and dismissing the plaintiff's habeas corpus proceeding – and explicitly noting the failure of the plaintiff to file any Objection thereto – the plaintiff submitted a supplemental Objection to the Court on June 9, 2012. In that supplemental Objection, the plaintiff notified the Court that he had in fact submitted a timely Objection to the Magistrate Judge's Report and attached a copy thereof. As a result of this supplemental pleading, the Eastern District Judge entered a second Order on August 6, 2012, again dismissing the plaintiff's habeas corpus proceeding and this time noting that the Court had "considered ... the [plaintiff's] objections to the Magistrate Judge's Report and Recommendation." Accordingly, it appears that the Eastern District Court ultimately reviewed and considered the plaintiff's Objection to the Magistrate Judge's Report, and the plaintiff is unable to show that he suffered any prejudice as a result of the initial failure to transmit his Objection to the Court.

Turning to the plaintiff's second claim, he asserts that after receiving the second final Order from the Eastern District Court dated August 6, 2012, dismissing his habeas corpus proceeding, he sent paperwork to the United States Court of Appeals for the Fifth Circuit "in a desperate attempt to explain [his] situation." *See* R. Doc. 7-1 at p. 4. According to the plaintiff, that paperwork was returned on or about September 21, 2012, with advice that the appellate court did not have jurisdiction to address his claims in the absence of a formal notice of appeal. The plaintiff then

12

sought help and advice from an LSP inmate legal assistant on or about September 28, 2012. The plaintiff complains that the inmate legal assistant retained the plaintiff's paperwork for more than 40 days and failed to take any action on the plaintiff's behalf. The plaintiff complains that the foregoing events resulted in the expiration of his time for seeking review in the federal appellate court and so again prejudiced his ability to pursue a challenge to his state court criminal convictions.

      The plaintiff's contentions in this regard are not persuasive. Specifically, the plaintiff is again unable to show that he was prejudiced by the conduct of defendant Foster, either through her personal involvement in the referenced events or because of her supervision over the legal assistance program at LSP. Upon issuance of the final Order of Dismissal in his Eastern District habeas corpus proceedings on August 6, 2012, the plaintiff had thirty (30) days from that date to file a notice of appeal to the Fifth Circuit Court. *See* Rule 4(a), Fed. R. App. P. This deadline is jurisdictional. *See Albritton v. Quarterman*, 424 Fed. Appx. 353 (5th Cir. 2011). By his own admission, the plaintiff did not properly file a notice of appeal within the required time period. Nor was the 30-day period for perfecting an appeal extended by his having erroneously sent his paperwork to the appellate court without having filed a notice of appeal. Accordingly, when the plaintiff allegedly requested legal advice and assistance from an inmate legal assistant at LSP on September 28, 2012, the time for seeking direct review before the appellate court had already expired. Thus, the retention of his paperwork by the inmate legal assistant and the failure of the inmate assistant to take any action on the plaintiff's behalf was without legal consequence. Accordingly, the plaintiff was not prejudiced in fact by any wrongdoing by the inmate assistant, nor by any deficiencies in the legal assistance program at LSP, nor by any alleged conduct by

defendant Foster. The plaintiff's claim in this regard, therefore, should be rejected.3

Finally, the plaintiff complains that in November 2012, after the occurrence of the foregoing events, he filed an administrative grievance at LSP regarding those events, but prison officials failed to provide a timely response. The plaintiff complains that, instead, prison officials urged him to voluntarily withdraw the grievance. The plaintiff asserts that the conduct of prison personnel in this regard constituted a further interference with his right to seek access to the courts.

This claim is also without constitutional merit. Specifically, the plaintiff again has suffered no apparent legal prejudice as a result of the failure to timely respond to his grievance. In the first place, prison officials ultimately addressed and fully resolved the administrative grievance. *See* R. Doc. 37-2 at p. 2. Second, the defendants have not asserted, as a defense to the plaintiff's claims in this proceeding, that he has failed to exhaust administrative remedies relative to his claims as mandated by 42 U.S.C. § 1997e. Accordingly, this Court has addressed the substantive claims asserted by the plaintiff in this proceeding and has not refused to consider any claim because of an asserted failure to exhaust administrative remedies in connection therewith. Therefore, inasmuch as a showing of cognizable legal detriment or prejudice is a prerequisite for a claim of interference with access to the courts, *Lewis v. Casey, supra*, 518 U.S. at 351, the plaintiff's claim in this regard must likewise be rejected because he has not shown that he suffered any prejudice or legal detriment because of the alleged mis-handling of his administrative claims.

---

3 Plaintiff filed an administrative grievance regarding the issue of inmate counsel holding his paperwork. Foster's response to plaintiff's grievance indicates she found merit with the contention and that inmate counsel was fired from Legal Programs. (R. Doc. 13-3) However, as explained above, because plaintiff did not even seek advice from inmate counsel within the applicable time period, plaintiff's claim against Foster must be dismissed.

## **RECOMMENDATION**

It is recommended that defendant Trish Foster's Motion for Summary Judgment (R. Doc. 53) be granted, and that this matter be dismissed, with prejudice.

Signed in Baton Rouge, Louisiana, on March 1, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**